

TRACY L. WILKISON
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JOSEPH T. MCNALLY (Cal. Bar No. 250289)
ASHWIN JANAKIRAM (Cal. Bar No. 277513)
SCOTT D. TENLEY (Cal. Bar No. 298911)
Assistant United States Attorneys
    United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (213) 894-2875
    Facsimile: (714) 338-3561
    Email: ashwin.janakiram@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SACR18-00124 JLS |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT DANIEL CAPEN |
|     v. | |
| DANIEL CAPEN, | |
|     Defendant. | |

    1.    This constitutes the plea agreement between DANIEL CAPEN ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT's OBLIGATIONS</u>

    2.    Defendant agrees to:

        a.    Give up the right to indictment by a grand jury and,

1   at the earliest opportunity requested by the USAO and provided by the
2   Court, appear and plead guilty to counts one and two of an
3   information in the form attached to this agreement as Exhibit A or a
4   substantially similar form (the "information"), which charges
5   defendant with conspiracy, in violation of 18 U.S.C. § 371, and
6   Receipt of Kickbacks in Connection with a Federal Health Care
7   Program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

8          b.   Not contest facts agreed to in this agreement.

9          c.   Abide by all agreements regarding sentencing contained
10  in this agreement.

11         d.   Appear for all court appearances, surrender as ordered
12  for service of sentence, obey all conditions of any bond, and obey
13  any other ongoing court order in this matter.

14         e.   Not commit any crime; however, offenses that would be
15  excluded for sentencing purposes under United States Sentencing
16  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
17  within the scope of this agreement.

18         f.   Be truthful at all times with Pretrial Services, the
19  United States Probation Office, and the Court.

20         g.   Pay the applicable special assessments at or before
21  the time of sentencing unless defendant lacks the ability to pay and
22  prior to sentencing submits a completed financial statement on a form
23  to be provided by the USAO.

24         h.   Not seek the discharge of any restitution obligation,
25  in whole or in part, in any present or future bankruptcy proceeding.

26         i.   Defendant understands and acknowledges that as a
27  result of pleading guilty pursuant to this agreement, defendant will
28  be excluded from Medicare, Medicaid, and all Federal health care

1  programs.  Defendant agrees to complete and execute all necessary
2  documents provided by the United States Department of Health and
3  Human Services, or any other department or agency of the federal
4  government, to effectuate this exclusion within 60 days of receiving
5  the documents.  This exclusion will not affect defendant's right to
6  apply for and receive benefits as a beneficiary under any Federal
7  health care program, including Medicare and Medicaid.
8       3.   Defendant further agrees:
9            a.   To forfeit the sum of $5,000,000.00 (five million
10 dollars) (the "Forfeitable Property"), which Forfeitable Property
11 defendant agrees (1) constitutes or is derived from proceeds
12 traceable to violations of 18 U.S.C. §§ 371, including the objects of
13 the conspiracy, and 42 U.S.C. § 1320a-7b(b); (2) was used to
14 facilitate and was involved in violations of 18 U.S.C. §§ 371,
15 including the objects of the conspiracy, and 42 U.S.C. § 1320a-7b(b);
16 and (3) shall, at the sole election of the United States of America,
17 be criminally forfeited or civilly forfeited, administratively or
18 judicially, pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, 28 U.S.C.
19 § 2461, or otherwise.
20           b.   To withdraw any claim defendant may have submitted to
21 any federal agency in any administrative forfeiture proceedings
22 commenced by that agency with respect to the Forfeitable Property.
23 Defendant further waives his rights, if any, to any initial or
24 further notice relative to any administrative forfeiture proceedings.
25 Defendant understands, acknowledges, and agrees that the Forfeitable
26 Property shall, at the sole election of the United States of America,
27 be administratively forfeited to the United States of America without
28 any further notice.

c.   To pay the Forfeitable Property to the United States
of America, at least in part, as follows:

(i)   within sixty (60) days of defendant's execution
of this plea agreement, defendant shall pay $2,000,000 (two million
dollars) by, at the United States of America's sole option
(1) delivering to the USAO a cashier's check payable in that amount
to the government entity identified in writing by the USAO, or (2)
wire transferring the funds to an account designated in writing by
the USAO; and

(ii)   At least thirty (30) days before defendant's
sentencing, defendant shall pay $1,500,000 million (one million five
hundred thousand dollars) by, at the United States of America's sole
option (1) delivering to the USAO a cashier's check payable in that
amount to the government entity identified in writing by the USAO, or
(2) wire transferring the funds to an account designated in writing
by the USAO.

d.   To refrain from contesting the forfeiture (by filing a
claim, statement of interest, petition for an ancillary proceeding,
petition for remission or otherwise) of the Forfeitable Property in
any administrative or judicial proceeding, or assisting any other
person or entity in falsely contesting the forfeiture of the
Forfeitable Property in any administrative or judicial proceeding.

e.   To take all steps necessary to pass to the United
States of America clear title to the Forfeitable Property, including,
without limitation, the execution of consent judgments of forfeiture,
the entry of any additional money judgments of forfeiture, the
identification of all monies, properties and assets of any kind owned
and/or controlled by defendant, the liquidation of any item of the

4

Forfeitable Property in the manner required by the United States of America in its sole discretion, the transmission of any item of the Forfeitable Property to the United States of America upon request by the USAO and the completion of any other legal documents required for the transfer of title to the Forfeitable Property to the United States of America.

      f.  To prevent the disbursement of the Forfeitable Property without the authorization of the USAO, if such disbursements are within defendant's direct or indirect control.

      g.  To the Court's entry of an order of forfeiture, including any personal money judgment of forfeiture, at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property. Defendant knowingly and voluntarily waives (i) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (ii) all constitutional and statutory challenges in any manner (including by direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this agreement on any grounds; and (iii) all constitutional, legal and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant also acknowledges and understands that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Rule 11(b)(1)(J), at the time defendant's guilty plea is accepted.

1          4.    Defendant further agrees to cooperate fully with the USAO,

2    Federal Bureau of Investigation, United States Postal Service-Office

3    of Inspector General, IRS-Criminal Investigation, and California

4    Department of Insurance, and, as directed by the USAO, any other

5    federal, state, local, or foreign prosecuting, enforcement,

6    administrative, or regulatory authority.  This cooperation requires

7    defendant to:

8               a.    Respond truthfully and completely to all questions

9    that may be put to defendant, whether in interviews, before a grand

10   jury, or at any trial or other court proceeding.

11              b.    Attend all meetings, grand jury sessions, trials or

12   other proceedings at which defendant's presence is requested by the

13   USAO or compelled by subpoena or court order.

14              c.    Produce voluntarily all documents, records, or other

15   tangible evidence relating to matters about which the USAO, or its

16   designee, inquires.

17              d.    If requested to do so by the USAO, act in an

18   undercover capacity to the best of defendant's ability in connection

19   with criminal investigations by federal, state, local, or foreign law

20   enforcement authorities, in accordance with the express instructions

21   of those law enforcement authorities.  Defendant agrees not to act in

22   an undercover capacity, tape record any conversations, or gather any

23   evidence except after a request by the USAO and in accordance with

24   express instructions of federal, state, local, or foreign law

25   enforcement authorities.

26        5.    For purposes of this agreement: (1) "Cooperation

27   Information" shall mean any statements made, or documents, records,

28   tangible evidence, or other information provided, by defendant

6

1 pursuant to defendant's cooperation under this agreement or pursuant
2 to the letter agreement previously entered into by the parties, dated
3 on or about December 11, 2017, as extended for subsequent proffer
4 sessions and designated cooperation-related document productions
5 prior to the effective date of this agreement (the "Letter
6 Agreement"); and (2) "Plea Information" shall mean any statements
7 made by defendant, under oath, at the guilty plea hearing and the
8 agreed to factual basis statement in this agreement.
9                          THE USAO'S OBLIGATIONS
10       6.    The USAO agrees to:
11             a.    Not contest facts agreed to in this agreement.
12             b.    Abide by all agreements regarding sentencing contained
13 in this agreement.
14             c.    Except for criminal tax violations (including
15 conspiracy to commit such violations chargeable under 18 U.S.C.
16 § 371), not further criminally prosecute defendant for violations
17 arising out of defendant's conduct described in the agreed-to factual
18 basis set forth in paragraph 22 below and in the attached Exhibit B.
19 Defendant understands that the USAO is free to criminally prosecute
20 defendant for any other unlawful past conduct or any unlawful conduct
21 that occurs after the date of this agreement.  Defendant agrees that
22 at the time of sentencing the Court may consider the uncharged
23 conduct in determining the applicable Sentencing Guidelines range,
24 the propriety and extent of any departure from that range, and the
25 sentence to be imposed after consideration of the Sentencing
26 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).
27             d.    Subject to paragraph 24, at the time of sentencing,
28 provided that defendant demonstrates an acceptance of responsibility

7

for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 27 or higher. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

f. To the extent paid prior to defendant's sentencing, credit any amount defendant paid to resolve any civil claims arising out of the conduct set forth in paragraph 22 and the attached Exhibit B to this agreement, towards defendant's payment of the Forfeitable Property.

7. The USAO further agrees:

a. Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to

other evidence, which evidence may be used for any purpose, including
any criminal prosecution of defendant; (2) to cross-examine defendant
should defendant testify, or to rebut any evidence offered, or
argument or representation made, by defendant, defendant's counsel,
or a witness called by defendant in any trial, sentencing hearing, or
other court proceeding; and (3) in any criminal prosecution of
defendant for false statement, obstruction of justice, or perjury.

      b.   Not to use Cooperation Information against defendant
at sentencing for the purpose of determining the applicable guideline
range, including the appropriateness of an upward departure, or the
sentence to be imposed, and to recommend to the Court that
Cooperation Information not be used in determining the applicable
guideline range or the sentence to be imposed.  Defendant
understands, however, that Cooperation Information will be disclosed
to the probation office and the Court, and that the Court may use
Cooperation Information for the purposes set forth in U.S.S.G
§ 1B1.8(b) and for determining the sentence to be imposed.

      c.   In connection with defendant's sentencing, to bring to
the Court's attention the nature and extent of defendant's
cooperation.

      d.   If the USAO determines, in its exclusive judgment,
that defendant has both complied with defendant's obligations under
paragraphs 2 through 4 above and provided substantial assistance to
law enforcement in the prosecution or investigation of another
("substantial assistance"), to move the Court pursuant to U.S.S.G.
§ 5K1.1 to fix an offense level and corresponding guideline range
below that otherwise dictated by the sentencing guidelines, and to
recommend a term of imprisonment within this reduced range.  In

9

1    making this determination and determining the extent of any motion,

2    the government may take into account benefits conferred to defendant

3    as a result of this plea agreement.

4                DEFENDANT's UNDERSTANDINGS REGARDING COOPERATION

5         8.   Defendant understands the following:

6              a.   Any knowingly false or misleading statement by

7    defendant will subject defendant to prosecution for false statement,

8    obstruction of justice, and perjury and will constitute a breach by

9    defendant of this agreement.

10             b.   Nothing in this agreement requires the USAO or any

11   other prosecuting, enforcement, administrative, or regulatory

12   authority to accept any cooperation or assistance that defendant may

13   offer, or to use it in any particular way.

14             c.   Defendant cannot withdraw defendant's guilty plea if

15   the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

16   reduced guideline range or if the USAO makes such a motion and the

17   Court does not grant it or if the Court grants such a USAO motion but

18   elects to sentence above the reduced range.

19             d.   The USAO's determination whether defendant has

20   provided substantial assistance will not depend in any way on whether

21   the government prevails at any trial or court hearing in which

22   defendant testifies or in which the government otherwise presents

23   information resulting from defendant's cooperation.

24                          NATURE OF THE OFFENSES

25        9.   Defendant understands that for defendant to be guilty of

26   the crime charged in count one of the information, that is,

27   conspiracy, in violation of Title 18, United States Code, Section

28   371, the following must be true: (1) between in or about 1998 and in

or about March 2013, there was an agreement between two or more persons to commit violations of Title 18, United States Code, Sections 1341, 1343, and 1346 (Honest Services Mail and Wire Fraud); Title 18, United States Code, Section 1952(a)(3) (Interstate Travel in Aid of Bribery); Title 18, United States Code, Section 1957 (Monetary Transactions in Property Derived from Specified Unlawful Activity); and Title 42, United States Code, Section 1320a-7b(b)(1), (b)(2) (Solicitation/Receipt and Offering/Paying Kickbacks in Connection with a Federal Health Care Program); (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

10. Defendant understands that Honest Services Mail and Wire Fraud, in violation of Title 18, United States Code, Sections 1341 and 1346, and 1343 and 1346, each an object of the conspiracy charged in the information, has the following elements: (1) the defendant devised or participated in a scheme or plan to deprive a patient of his or her right to honest services; (2) the scheme or plan included payments of bribes and kickbacks to medical professionals in exchange for medical services or items; (3) the medical professionals owed a fiduciary duty to the patients; (4) the defendant acted with the intent to defraud by depriving the patients of their right of honest services of the medical professionals; (5) the defendant's act was material, that is, it had a natural tendency to influence, or was capable of influencing, a person's acts; and (6) the defendant used, or caused someone to use, the mails and a wire communication to carry out or attempt to carry out the scheme or plan.

11. Defendant understands that Interstate Travel in Aid of Bribery, in violation of Title 18, United States Code, Section 1952(a)(3), one of the objects of the conspiracy charged in the information, has the following elements: (1) defendant used the mail or a facility of interstate commerce with the intent to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activity, specifically payment and receipt of kickbacks in violation of California Business & Professions Code § 650 and California Insurance Code § 750; and (2) after doing so, defendant performed or attempted to perform an act to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment, or carrying on, of such unlawful activity.

12. Defendant understands that Transactional Money Laundering, in violation of Title 18, United States Code, Section 1957, one of the objects of the conspiracy charged in the information, has the following elements: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from specified unlawful activity, namely, honest services mail or wire fraud, health care fraud, or illegal kickbacks for health care referrals; and (5) the transaction occurred in the United States.

13. Defendant understands that Payment or Receipt of Kickbacks in Connection with a Federal Health Care Program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(2) and (b)(1), each an object of the conspiracy charged in the information, has the

12

following elements: (1) defendant knowingly and willfully paid or received remuneration, directly or indirectly, in cash or in kind, to or from another person; (2) the remuneration was given to induce that person to refer an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program; and (3) defendant knew that such payment of remuneration was illegal.

14.   Defendant understands that for defendant to be guilty of Receipt of Kickbacks in Connection with a Federal Health Care Program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1), as charged in count two of the information, has the following elements: (1) defendant knowingly and willfully received remuneration, directly or indirectly, in cash or in kind, from another person; (2) the remuneration was given to induce defendant to refer an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program; and (3) defendant knew that such payment of remuneration was illegal.

<u>PENALTIES AND RESTITUTION</u>

15.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, as charged in count one of the information, is: five years' imprisonment, a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

16.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 42, United States

1    Code, Section 1320a-7b(b)(1)(A), is: five years' imprisonment; a
2    three-year period of supervised release; a fine of $250,000 or twice
3    the gross gain or gross loss resulting from the offense, whichever is
4    greatest; and a mandatory special assessment of $100.

5         17.   Defendant therefore understands that the total maximum
6    sentence for all offenses to which defendant is pleading guilty is:
7    ten years' imprisonment; a three-year period of supervised release; a
8    fine of $500,000 or twice the gross gain or gross loss resulting from
9    the offense, whichever is greatest; and a mandatory special
10   assessment of $200.

11        18.   Defendant understands that defendant will be required to
12   pay full restitution to the victims of the offenses to which
13   defendant is pleading guilty.  Defendant agrees that, in return for
14   the USAO's compliance with its obligations under this agreement, the
15   Court may order restitution to persons other than the victims of the
16   offenses to which defendant is pleading guilty and in amounts greater
17   than those alleged in the counts to which defendant is pleading
18   guilty.  In particular, defendant agrees that the Court may order
19   restitution to any victim of any of the following for any losses
20   suffered by that victim as a result: (a) any relevant conduct, as
21   defined in U.S.S.G. § 1B1.3, in connection with the offenses to which
22   defendant is pleading guilty; and (b) any charges not prosecuted
23   pursuant to this agreement as well as all relevant conduct, as
24   defined in U.S.S.G. § 1B1.3, in connection with those charges.  The
25   parties further agree that any amount forfeited under this agreement
26   and/or paid in order to resolve civil claims arising from the conduct
27   set forth in paragraph 22 and the attached Exhibit B to this
28   agreement shall be credited towards defendant's payment of any

1  restitution obligation the Court may order, and that any amount
2  actually paid as restitution shall be credited towards the payment of
3  the Forfeitable Property.  The parties also agree that payments made
4  to the government in satisfaction of any civil resolution of claims
5  filed under the False Claims Act, 31 U.S.C. § 3729, based upon the
6  conduct set forth in forth in paragraph 22 and the attached Exhibit
7  B, shall be deemed payments toward restitution.

8       19.  Defendant understands that supervised release is a period
9  of time following imprisonment during which defendant will be subject
10  to various restrictions and requirements.  Defendant understands that
11  if defendant violates one or more of the conditions of any supervised
12  release imposed, defendant may be returned to prison for all or part
13  of the term of supervised release authorized by statute for the
14  offense that resulted in the term of supervised release, which could
15  result in defendant serving a total term of imprisonment greater than
16  the statutory maximum stated above.

17       20.  Defendant understands that, by pleading guilty, defendant
18  may be giving up valuable government benefits and valuable civic
19  rights, such as the right to vote, the right to possess a firearm,
20  the right to hold office, and the right to serve on a jury.
21  Defendant understands that once the court accepts defendant's guilty
22  pleas, it will be a federal felony for defendant to possess a firearm
23  or ammunition.  Defendant understands that the conviction in this
24  case may also subject defendant to various other collateral
25  consequences, including but not limited to revocation of probation,
26  parole, or supervised release in another case, mandatory exclusion
27  from providing services for any federal health care benefit program
28  for at least five years, and suspension or revocation of a

1    professional license.  Defendant understands that unanticipated
2    collateral consequences will not serve as grounds to withdraw
3    defendant's guilty pleas.
4         21.  Defendant understands that, if defendant is not a United
5    States citizen, the felony convictions in this case may subject
6    defendant to: removal, also known as deportation, which may, under
7    some circumstances, be mandatory; denial of citizenship; and denial
8    of admission to the United States in the future.  The court cannot,
9    and defendant's attorney also may not be able to, advise defendant
10   fully regarding the immigration consequences of the felony
11   convictions in this case.  Defendant understands that unexpected
12   immigration consequences will not serve as grounds to withdraw
13   defendant's guilty pleas.
14                              FACTUAL BASIS
15        22.  Defendant admits that defendant is, in fact, guilty of the
16   offenses to which defendant is agreeing to plead guilty.  Defendant
17   and the USAO agree to the statement of facts provided in the attached
18   Exhibit B and agree that this statement of facts is sufficient to
19   support pleas of guilty to the charges described in this agreement
20   and to establish the Sentencing Guidelines factors set forth in
21   paragraph 24 below, but is not meant to be a complete recitation of
22   all facts relevant to the underlying criminal conduct or all facts
23   known to either party that relate to that conduct.
24                            SENTENCING FACTORS
25        23.  Defendant understands that in determining defendant's
26   sentence the Court is required to calculate the applicable Sentencing
27   Guidelines range and to consider that range, possible departures
28   under the Sentencing Guidelines, and the other sentencing factors set

                                   16

forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the offenses of
conviction.

24.  Defendant and the USAO stipulate and agree to the following
applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. § 2B4.1(a)(2)] |
| Specific Offense Characteristics | | |
| Value of Improper Benefit Conferred to Pacific Hospital (between $9.5M and $25M): | +20 | [U.S.S.G. § 2B4.1(b)(1)(B)] |
| Abuse of Position of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(a)] |
| Total offense level: | 27 | |

The USAO will agree to a two-level downward adjustment for acceptance
of responsibility (and, if applicable, move for an additional one-
level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the
conditions set forth in paragraphs 2 through 4 and 7(d) are met and
if defendant has not committed, and refrains from committing, acts
constituting obstruction of justice within the meaning of U.S.S.G. §
3C1.1, as discussed below.  Subject to paragraph 39 below, defendant
and the USAO agree not to seek, argue, or suggest in any way, either
orally or in writing, that any other specific offense
characteristics, adjustments, or departures relating to the offense

17

level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

25.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

26.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF STATUTE OF LIMITATIONS

27.  Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offenses to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the offenses to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the information alleging those offenses; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offenses to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

WAIVER OF CONSTITUTIONAL RIGHTS

28.   Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel – and if necessary have the court appoint counsel – at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

     f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

     g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

     h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTIONS

29.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up

19

1  any right to appeal defendant's convictions on the offenses to which
2  defendant is pleading guilty.

3              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4       30.  Defendant agrees that, provided the Court imposes a total
5  term of imprisonment on all counts of conviction at or below the
6  high-end of the Sentencing Guidelines range corresponding to a total
7  offense level of 27 and the criminal history category determined by
8  the Court, defendant gives up the right to appeal all of the
9  following: (a) the procedures and calculations used to determine and
10 impose any portion of the sentence; (b) the term of imprisonment
11 imposed by the Court; (c) the fine imposed by the court, provided it
12 is within the statutory maximum; (d) the amount and terms of any
13 restitution order, provided it requires payment of no more than
14 $10,000,000 (ten million dollars); (e) the term of probation or
15 supervised release imposed by the Court, provided it is within the
16 statutory maximum; and (f) any of the following conditions of
17 probation or supervised release imposed by the Court: the conditions
18 set forth in General Orders 318, 01-05, and/or 05-02 of this Court;
19 the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and
20 3583(d); and the alcohol and drug use conditions authorized by 18
21 U.S.C. § 3563(b)(7).

22      31.  Defendant also gives up any right to bring a post-
23 conviction collateral attack on the convictions or sentence,
24 including any order of restitution, except a post-conviction
25 collateral attack based on a claim of ineffective assistance of
26 counsel, a claim of newly discovered evidence, or an explicitly
27 retroactive change in the applicable Sentencing Guidelines,
28 sentencing statutes, or statutes of conviction.

1    32.   The USAO agrees that, provided all portions of the sentence
2  are at or below the total statutory maximum specified above, the USAO
3  gives up its right to appeal any portion of the sentence.

4                RESULT OF WITHDRAWAL OF GUILTY PLEAS

5    33.   Defendant agrees that if, after entering guilty pleas
6  pursuant to this agreement, defendant seeks to withdraw and succeeds
7  in withdrawing any of defendant's guilty pleas on any basis other
8  than a claim and finding that entry into this plea agreement was
9  involuntary, then (a) the USAO will be relieved of all of its
10 obligations under this agreement, including in particular its
11 obligations regarding the use of Cooperation Information; (b) in any
12 investigation, criminal prosecution, or civil, administrative, or
13 regulatory action, defendant agrees that any Cooperation Information
14 and any evidence derived from any Cooperation Information shall be
15 admissible against defendant, and defendant will not assert, and
16 hereby waives and gives up, any claim under the United States
17 Constitution, any statute, or any federal rule, that any Cooperation
18 Information or any evidence derived from any Cooperation Information
19 should be suppressed or is inadmissible; and (c) should the USAO
20 choose to pursue any charge that was not filed as a result of this
21 agreement, then (i) any applicable statute of limitations will be
22 tolled between the date of defendant's signing of this agreement and
23 the filing commencing any such action; and (ii) defendant waives and
24 gives up all defenses based on the statute of limitations, any claim
25 of pre-indictment delay, or any speedy trial claim with respect to
26 any such action, except to the extent that such defenses existed as
27 of the date of defendant's signing this agreement.

28

                                21

EFFECTIVE DATE OF AGREEMENT

34.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

35.   Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use

22

1  any Cooperation Information in any way in any investigation, criminal
2  prosecution, or civil, administrative, or regulatory action.

3          c.   The USAO will be free to criminally prosecute
4  defendant for false statement, obstruction of justice, and perjury
5  based on any knowingly false or misleading statement by defendant.

6          d.   In any investigation, criminal prosecution, or civil,
7  administrative, or regulatory action: (i) defendant will not assert,
8  and hereby waives and gives up, any claim that any Cooperation
9  Information was obtained in violation of the Fifth Amendment
10 privilege against compelled self-incrimination; and (ii) defendant
11 agrees that any Cooperation Information and any Plea Information, as
12 well as any evidence derived from any Cooperation Information or any
13 Plea Information, shall be admissible against defendant, and
14 defendant will not assert, and hereby waives and gives up, any claim
15 under the United States Constitution, any statute, Rule 410 of the
16 Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
17 Criminal Procedure, or any other federal rule, that any Cooperation
18 Information, any Plea Information, or any evidence derived from any
19 Cooperation Information or any Plea Information should be suppressed
20 or is inadmissible.

21    36.   Following the Court's finding of a knowing breach of this
22 agreement by defendant, should the USAO choose to pursue any charge
23 that was not filed as a result of this agreement, then:

24          a.   Defendant agrees that any applicable statute of
25 limitations is tolled between the date of defendant's signing of this
26 agreement and the filing commencing any such action.

27          b.   Defendant waives and gives up all defenses based on
28 the statute of limitations, any claim of pre-indictment delay, or any

23

speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

37.  Defendant agrees that if any count of conviction is
vacated, reversed, or set aside, the USAO may: (a) ask the Court to
resentence defendant on any remaining count of conviction, with both
the USAO and defendant being released from any stipulations regarding
sentencing contained in this agreement, (b) ask the Court to void the
entire plea agreement and vacate defendant's guilty plea on any
remaining count of conviction, with both the USAO and defendant being
released from all their obligations under this agreement, or
(c) leave defendant's remaining conviction, sentence, and plea
agreement intact.  Defendant agrees that the choice among these three
options rests in the exclusive discretion of the USAO.

### COURT AND PROBATION OFFICE NOT PARTIES

38.  Defendant understands that the Court and the United States
Probation Office are not parties to this agreement and need not
accept any of the USAO's sentencing recommendations or the parties'
agreements to facts or sentencing factors.

39.  Defendant understands that both defendant and the USAO are
free to: (a) supplement the facts by supplying relevant information
to the United States Probation Office and the Court, (b) correct any
and all factual misstatements relating to the Court's Sentencing
Guidelines calculations and determination of sentence, and (c) argue
on appeal and collateral review that the Court's Sentencing
Guidelines calculations and the sentence it chooses to impose are not
error, although each party agrees to maintain its view that the

24

1  calculations in paragraph 24 above are consistent with the facts of
2  this case.  While this agreement permits both the USAO and defendant
3  to submit full and complete factual information to the United States
4  Probation Office and the Court, even if that factual information may
5  be viewed as inconsistent with the facts agreed to in this agreement,
6  this agreement does not affect defendant's and the USAO's obligations
7  not to contest the facts agreed to in this agreement.

8      40.    Defendant understands that even if the Court ignores any
9  sentencing recommendation, finds facts or reaches conclusions
10 different from those agreed to, and/or imposes any sentence up to the
11 maximum established by statute, defendant cannot, for that reason,
12 withdraw defendant's guilty pleas, and defendant will remain bound to
13 fulfill all defendant's obligations under this agreement.  Defendant
14 understands that no one -- not the prosecutor, defendant's attorney,
15 or the Court -- can make a binding prediction or promise regarding
16 the sentence defendant will receive, except that it will be within
17 the statutory maximum.

18                        NO ADDITIONAL AGREEMENTS

19     41.    This agreement supersedes and replaces the Letter
20 Agreement.  Defendant understands that, except as set forth in this
21 agreement, there are no promises, understandings, or agreements
22 between the USAO and defendant or defendant's attorney, and that no
23 additional promise, understanding, or agreement may be entered into
24 unless in a writing signed by all parties or on the record in court.
25 ///
26 ///
27 ///
28

1

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      42.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   TRACY L. WILKISON
    Attorney for the United States,
9   Acting Under Authority Conferred
    by 28 U.S.C. § 515

10

11

12  _____      _____
    ASHWIN JANAKIRAM                 Date
13  Assistant United States Attorney

14

15

16  _____      _____
    DANIEL CAPEN                     Date
17  Defendant

18

19  _____      _____
    DOUGLAS A. AXEL                  Date  4/20/18
20  Attorney for Defendant
    DANIEL CAPEN

21

22

23

24

25

26

27

28

                              26

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        42.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   TRACY L. WILKISON
    Attorney for the United States,
9   Acting Under Authority Conferred
    by 28 U.S.C. § 515

10

11  _____          6/1/18
                                               _____
12  ASHWIN JANAKIRAM                           Date
    Assistant United States Attorney

13

14  _____          4-19-18
                                               _____
15
    DANIEL CAPEN                               Date
16  Defendant

17

18

19  _____          _____
    DOUGLAS A. AXEL                            Date
20  Attorney for Defendant
    DANIEL CAPEN

21

22

23

24

25

26

27

28

                              26

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
DANIEL CAPEN                                              Date    4·19·18
Defendant

27

1    <u>CERTIFICATION OF DEFENDANT's ATTORNEY</u>

2         I am DANIEL CAPEN's attorney.  I have carefully and thoroughly

3    discussed every part of this agreement with my client.  Further, I

4    have fully advised my client of his rights, of possible pretrial

5    motions that might be filed, of possible defenses that might be

6    asserted either prior to or at trial, of the sentencing factors set

7    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   guilty pleas pursuant to this agreement.

16

17                                                          4/20/18

18   _____      _____
     DOUGLAS A. AXEL                          Date
     Attorney for Defendant
19   DANIEL CAPEN

20

21

22

23

24

25

26

27

28

                                   28

1               **EXHIBIT B**

2             **STATEMENT OF FACTS**

3 Relevant Entities

4       Healthsmart Pacific Inc., doing business as Pacific Hospital of

5 Long Beach ("Pacific Hospital" or "PHLB"), was a hospital located in

6 Long Beach, California, specializing in surgeries, particularly

7 spinal and orthopedic surgeries.  From in or around 1997 to in or

8 around June 2004, Pacific Hospital was owned by majority shareholder

9 Michael D. Drobot ("Drobot").

10      On or about September 27, 2005, unindicted co-conspirator A

11 ("UCC-A") effectively became the sole shareholder of Pacific Hospital

12 through his ownership and control of the "[UCC-A] Family Trust,"

13 which, in turn, owned Abrazos Healthcare, Inc. ("Abrazos"), a

14 privately held corporation formed and incorporated in February 2005

15 for the purpose of purchasing shares of Pacific Hospital from Drobot.

16 UCC-A, through Abrazos, also acquired other interests in affiliated

17 entities previously owned and/or controlled by Drobot.  Between 1998

18 and March 2013, Pacific Hopsital was operated and/or controlled by

19 Drobot and UCC-A.

20      In about June 2006, UCC-A offered defendant DANIEL CAPEN

21 ("defendant"), an orthopedic surgeon, the opportunity to purchase 10%

22 of the common stock of Abrazos to further cement defendant's

23 relationship with Pacific Hospital and incentivize defendant's

24 referral of patients for surgeries and other medical services to

25 Pacific Hospital.  While defendant acquired 10% of the common stock

26 of Abrazos, which effectively gave defendant a 10% ownership interest

27 in Pacific Hospital, he did not operate or control the hospital and

28 did not ultimately profit from his investment.

On or about October 12, 2010, Drobot, through an affiliated entity, purchased UCC-A's shares of Abrazos, which effectively provided Drobot a 90% ownership interest in Pacific Hospital, while defendant continued to maintain his 10% ownership interest in Pacific Hospital.

Pacific Specialty Physician Management, Inc. ("PSPM") was a corporation headquartered in Newport Beach, California, that provided administrative and management services for physicians' offices, including the management of the Southwestern Orthopedic Medical Corporation, doing business as Downey Orthopedic Medical Group ("Downey Ortho"). Defendant CAPEN, along with other physicians affiliated with Downey Ortho, maintained a medical practice at various Downey Ortho clinic locations.

California Pharmacy Management LLC ("CPM") was a limited liability company, headquartered in Newport Beach, California, that operated and managed a pharmaceutical dispensing program in medical clinics for physicians. Drobot and Michael R. Drobot Jr. ("Drobot Jr.") owned and/or operated CPM.

Industrial Pharmacy Management LLC ("IPM") was a limited liability company, headquartered in Newport Beach, California. IPM operated and managed a pharmaceutical dispensing program in medical clinics for physicians through the use of pharmaceutical management agreements and claims purchase agreements. Drobot principally owned and controlled IPM until approximately 2010, when Drobot Jr. assumed ownership and control of IPM.

International Implants LLC ("I2") was a limited liability company, headquartered in Newport Beach, California, that purchased implantable medical hardware for use in spinal surgeries from

original manufacturers and sold them to hospitals, particularly Pacific Hospital, starting around July 2008. I2 was effectively owned and/or controlled by Drobot.

PHLB, PSPM, CPM, IPM, and I2 are collectively referred to herein as "Pacific Hospital and Affiliated Entities."

The Kickback Arrangements

Defendant was an orthopedic surgeon specializing in spinal surgeries and owed a fiduciary duty to his patients. Beginning in or around 1998 and continuing through at least March 2013, defendant, along with Drobot, UCC-A, Drobot Jr., James Canedo ("Canedo"), George William Hammer ("Hammer"), Timothy Hunt ("Hunt"), and others, agreed to participate and did, in fact, participate in an illegal arrangement to pay and receive kickbacks in exchange for referring and performing surgeries and other patient-related services at Pacific Hospital and Affiliated Entities. As part of the agreement, defendant agreed to receive proceeds of the kickback scheme, and subsequently participate in financial transactions over $10,000 involving such proceeds.

To facilitate the payment of kickbacks, Drobot and UCC-A caused Pacific Hospital and Affiliated Entities to enter into agreements with physicians, including defendant, and other medical professionals ("Pacific Kickback Recipients") that were used to pay kickbacks in exchange for the referral of spinal surgeries, other types of surgeries, magnetic resonance imaging ("MRI"), toxicology ("UDT"), durable medical equipment, and other services (the "Kickback Tainted Surgeries and Services") to be performed at Pacific Hospital and Affiliated Entities.

1    In many cases, the agreements would be reduced to written
2  contracts, including, among others, collection agreements, option
3  agreements, research and development agreements, lease and rental
4  agreements, consulting agreements, marketing agreements, management
5  agreements, and pharmacy agreements.  The written agreements would
6  not specify that one purpose for the agreements would be to induce
7  Pacific Kickback Recipients to refer Kickback Tainted Surgeries and
8  Services to Pacific Hospital and Affiliated Entities; indeed, some of
9  the agreements would specifically state that referrals were not
10  contemplated or a basis for the agreement.  Additionally, the value
11  or consideration discussed as part of these arrangements would be
12  paid, entirely or in part, depending on the arrangement, to cause
13  Pacific Kickback Recipients to refer Kickback Tainted Surgeries and
14  Services to Pacific Hospital and Affiliated Entities.  Relatedly, the
15  written contracts would generally allow for remuneration to Pacific
16  Kickback Recipients far in excess of any reasonable fair market value
17  assessment of legitimate services or things of value purportedly
18  contracted for -- to the extent calculated without regard to the
19  value of the Kickback Tainted Surgeries and Services.
20    Defendant received remuneration in exchange for referring and
21  performing Kickback Tainted Surgeries and Services at Pacific
22  Hospital and Affiliated Entities.  These illegal kickbacks and bribes
23  were provided to defendant under the guise of various arrangements,
24  both written and oral, including a management agreement with PSPM; a
25  medical directorship with Abrazos; payments from Pacific Hospital for
26  UDT referrals obtained through PMR; and payments representing
27  purported consulting fees, bonuses, and dividends.
28

For example, under the PSPM management agreement, starting in or about 1998 and continuing until at least March 2013, PSPM facilitated the payment of kickbacks to defendant by subsidizing medical practice costs that would have otherwise been passed on to, and reduced the profits of, defendant and Downey Ortho.  More specifically, defendant and other physicians at Downey Ortho entered into an agreement with PSPM to provide management and administration of day-to-day business operations, including equipment and furnishings, billing and collection services, rent, administrative staff salaries, and other miscellaneous expenses.  In exchange for these management and administrative services, PSPM was entitled to a percentage of Downey Ortho's monthly collections from patient billings, and, in turn, an allocated share of the monthly collections for defendant and other co-conspirators practicing at Downey Ortho.

According to the terms of the management agreement between PSPM and Downey Ortho, PSPM's management fee, which was calculated as a specified percentage of Downey Ortho's monthly collections, was purportedly: (1) "projected to be sufficient to enable PSPM to recover all of the operating expenses of PSPM [and] generate a reasonable return on investment[;]" and (2) calculated "without taking into account . . . the volume or value of any referrals of business from . . . [Downey Ortho] to PSPM (or its affiliates)[.]" The PSPM management agreement further provided:

> No amount paid hereunder is intended to be, nor shall it be construed to be, an inducement or payment for referral of, or recommending referral of, patients by [Downey Ortho] to PSPM (or its affiliates)[.]  In addition, the management fee charged hereunder does not include any discount,

33

1          rebate, kickback, or other reduction in charge, and the

2          management fee charged hereunder is not intended to be, nor

3          shall it be construed to be, an inducement or payment for

4          referral, or recommendation of referral, of patients by

5          [Downey Ortho] [to] PSPM (or its affiliates)[.]

6      In reality, however, PSPM's management fee was "upside down,"

7  such that the percentage of monthly collections Downey Ortho paid to

8  PSPM would cover only a fraction of PSPM's expenses associated with

9  the management of Downey Ortho.  Defendant, other Downey Ortho-

10 Affiliated Physicians, Drobot, UCC-A, and other co-conspirators

11 understood that PSPM's percentage of the monthly collections would

12 not be enough to pay the monthly operating expenses and other costs

13 associated with managing Downey Ortho, and that the recurring PSPM

14 deficit would allow defendant and other Downey Ortho physicians to

15 retain a larger share of monthly Downey Ortho collections.  Defendant

16 and his co-conspirators understood that PSPM was willing to absorb

17 these losses because defendant and other Kickback Induced Surgeons

18 would refer Kickback Tainted Surgeries and Services to Pacific

19 Hospital and Affiliated Entities.  Further, starting in mid-2008,

20 Drobot and other co-conspirators told defendant and Downey Otho's

21 other Kickback Induced Surgeons that they need to use I2 hardware in

22 surgeries at Pacific Hospital.  The profits from I2 financed the PSPM

23 kickbacks and subsidized PSPM's losses.

24     The Kickback Induced Surgeries included surgeries reimbursed

25 under various federal health programs.  For example, on or about

26 December 8, 2012, defendant performed surgery on patient G.G.  As a

27 result, on or about January 7, 2013, Pacific Hospital mailed a claim

28 for the hospital-billing component of patient G.G.'s medical care to

1   DOL-OWCP, which administers a federal workers' compensation program
2   (the "FECA program").  On or about February 7, 2013, DOL-OWCP caused
3   a U.S. Treasury Check in the amount of $147,263.46 to be mailed to
4   Pacific Hospital for reimbursement of various claims, including
5   $57,445.81 related to the hospital-billing component of patient
6   G.G.'s medical care reimbursed under the FECA program.

7        Defendant understood that: (1) PSPM existed for Pacific
8   Hospital's benefit; (2) Pacific Hospital was closely affiliated with
9   PSPM; and (3) based on the value of Kickback Tainted Surgeries and
10  Services that defendant and other Downey Ortho physicians referred to
11  Pacific Hospital and Affiliated Entities, Pacific Hospital and
12  Affiliated Entities would subsidize the losses associated with PSPM's
13  management of Downey Ortho.  Had defendant and his fellow Kickback
14  Induced Surgeons stopped referring and performing surgeries at
15  Pacific Hospital, defendant knew that the arrangement with PSPM would
16  be terminated.

17       Hunt was an orthopedic surgeon specializing in shoulder and knee
18  arthroscopy, who, starting in approximately June 2008, owned and
19  operated Allied Medical Group ("Allied Medical"), a medical practice
20  with clinics in Lawndale and Long Beach, California.  As Hunt
21  historically referred spinal surgery candidates to defendant,
22  defendant, along with Drobot, UCC-A, and others, arranged for Drobot
23  to pay kickbacks and bribes to Hunt in exchange for Hunt referring
24  spinal surgeries to defendant that defendant would perform at Pacific
25  Hospital.  More specifically, UCC-A and Drobot entered into various
26  contractual relationships with Hunt, including a loan, a
27  substantially below-market sublease, an option agreement, and
28  pharmacy dispensing contracts, to disguise remuneration paid to Hunt

35

1 │ to induce additional spinal surgery referrals to defendant.   In
2 │ connection with Hunt's option agreement, for example, in
3 │ approximately January 2009, UCC-A, Hunt, and defendant met in UCC-A's
4 │ office to discuss the monthly volume of spinal surgery referrals from
5 │ Hunt to Capen.   UCC-A and Hunt ultimately agreed that Hunt would be
6 │ paid approximately $30,000 per month under a sham option contract to
7 │ induce and reward Hunt to refer a target of approximately three
8 │ spinal surgeries per month to defendant, who would perform such
9 │ surgeries at Pacific Hospital.

10 │    Defendant and his co-conspirators knew that the payment of
11 │ bribes and kickbacks for the referral of patients for medical
12 │ services was illegal.   Defendant also understood the above-described
13 │ kickback and bribe payments were conditioned on his continued volume
14 │ of referrals to Pacific Hospital and Affiliated Entities.   Moreover,
15 │ the payment of kickbacks for the referral of Kickback Tainted
16 │ Surgeries and Services performed at Pacific Hospital was to material
17 │ to health care benefit programs and patients.   The use of interstate
18 │ wires and mailings to execute essential parts of the scheme was
19 │ foreseeable to defendant.   Moreover, interstate wires and mailings
20 │ were used to execute essential parts of the scheme.

21 │    Between 1998 and April 2013, defendant referred or performed
22 │ Kickback Tainted Surgeries and Services comprising approximately $142
23 │ million of the total amount Pacific Hospital billed to health care
24 │ benefit programs, and for which Pacific Hospital was paid
25 │ approximately $56 million.   The parties stipulate and agree that the
26 │ value of the benefit conferred to Pacific Hospital from the
27 │ arrangements with defendant, which were designed to steer Kickback

28 │

1   Tainted Surgeries and Services to the hospital and affiliated
2   entities, was between $9.5 million and $25 million.